FILED

**United States District Court**
**Northern District of Indiana**
_____Division

2011 MAR 22  PM 1: 34

STEPHEN R. LUDWIG, CLERK
U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF INDIANA

AMANDA J. BROWNLEE )
(Plaintiff) )
 )
 )
vs. )
AMERICAN ELECTRIC POWER )
(Defendant). )  AKA
INDIANA & MICHIGAN POWER )

1:11CV097 - JVB

## EMPLOYMENT DISCRIMINATION COMPLAINT

Plaintiff brings a complaint against defendant AMERICAN ELECTRIC POWER
for discrimination as set forth below.  AKA INDIANA MICHIGAN POWER

Plaintiff _____ DOES  X  DOES NOT (indicate which) demand a jury trial.

### I. PARTIES

Plaintiff's Name:  AMANDA J BROWNLEE

Plaintiff's Address:  3203 Hoagland Av
FORT WAYNE IN 46807

Plaintiff's Telephone:  260-249-1337

Defendant's Name:  AMERICAN ELECTRIC Power Indiana Michigan POWER

Defendant's Address:  ONE Summit Square  110 E Wayne St
FORT WAYNE IN 46801  PO BOX 60

## II. BASIS OF CLAIM AND JURISDICTION

1.  This complaint is brought pursuant to:

    ___ Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e-5), and jurisdiction is based on 28 U.S.C. §§1331 and 1343(a);

    ___ The Age Discrimination in Employment Act (29 U.S.C. §621), and jurisdiction is based on 28 U.S.C. §§1331 and 1343(a);

    ✗ The Americans with Disabilities Act (42 U.S.C. §12101), and jurisdiction is based on 28 U.S.C. §§1331 and 1343(a);

    ___ The Rehabilitation Act (29 U.S.C. §701, *et seq.*), and jurisdiction is based on 28 U.S.C. §§1331 and 1343(a);

    ___ Equal rights under law (42 U.S.C. §1981), and jurisdiction is based on 28 U.S.C. §§1331 and 1343(a);

    ___ Other (list): _____

2.  Plaintiff ✗ DID ___ DID NOT (indicate which) file a charge of discrimination with the Equal Employment Opportunity Commission or the Indiana Civil Rights Commission. **[If the plaintiff did file a charge of discrimination, Plaintiff should attach a copy of the charge to the complaint].**

3.  Plaintiff's Right to Sue Notice from the Equal Employment Opportunity Commission or the Indiana Civil Rights Commission was **RECEIVED** on or about <u>DEC 22, 2011</u> (insert date the plaintiff **received** the notice – in most instances this will not be the same date stamped on the notice). **[Plaintiff should attach a copy of the Notice of Right to Sue to this Complaint].**

### III. STATEMENT OF LEGAL CLAIM

Plaintiff is entitled to relief in this action because (if more space is needed, attach additional pages):

I had been sick for some time. I made a mistake on my timesheet and was fired for falsification of documents. Supervisors corrected mistakes as needed in the past. I was fired in July 2008 for a mistake posting in May 2008. I was on sick leave when I was fired due to come back to work in July 2008 with doctor release papers. The union and arbitration proved that I made a coding error and not "knowing/willfully" falsify payroll records. I got my job back with full seniority and same level of pay but no financial recovery. I posted sick time on sign-in sheets but not on payroll sheet.

The facts on which this complaint is based are the following (if you need additional space, please attach additional pages):

CO-WORKER payroll provES that timEsheets WERE
corrected by supervisors for mistakes. I WAS UNDER doctor's
CarE and meds werE not working. Doctor informEd them I was
sick but paperwork was Not Exactly what they wanted so I was
not on LEAVE of absCENCE with **NO** sick benefits while I was sick
with diabetes and depression. The UNION proved this was a flexible
dept and I usually madeUp 4mE for Extra restroom breaks if needed
OR doctor apts Etc. They firEd mE before I camE back toWork from
doctor's CARE.

## IV. PRAYER FOR RELIEF

Based on the foregoing, plaintiff seeks the following relief:

Lost wagEs, punitivE damagEs, MEntal strEss
and age suffEring, attorney fees

## VI. AFFIRMATION OF PLAINTIFF

I, Amanda J Brownlee , the plaintiff in the aforementioned cause, do affirm that I have read all of the statements contained in the complaint and those which are attached in the accompanying financial statement. I believe them to be, to the best of my personal knowledge, true and correct.

Further, I do understand that this complaint and this affidavit will become and official part of the United States District Court files and that ANY FALSE STATEMENTS knowingly made by me are illegal and may subject me to criminal penalties.

Amanda J Brownlee
(Signature of Plaintiff)

3/21/11
(Date)

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: **Amanda J. Brownlee**<br>**3203 Hoagland Ave.**<br>**Fort Wayne, IN 46807** | From: **Indianapolis District Office**<br>**101 West Ohio St**<br>**Suite 1900**<br>**Indianapolis, IN 46204** |

| | |
|---|---|
| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 24D-2008-00479 | **Ethel M. Harmon,**<br>**State & Local Program Manager** | **(317) 226-6144** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Webster N Smith*                     DEC 2 2 2010

Enclosures(s)

**Webster N. Smith,**
**Acting District Director**                    *(Date Mailed)*

cc:    **Thomas H. Dawson, Manager**
**Labor relaations & EEO**
**INDIANA MICHIGAN POWER**
**One Summit Square 110 E. Wayne St.**
**Po Box 60**
**Fort Wayne, IN 46801**

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA | EO-0270-A8 |
| | [X] EEOC | 24D-2008-00479 |

| City of Fort Wayne Metro Human Relations Commission | and EEOC |
|---|---|

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Amanda J. Brownlee** | (260) 744-0220 | 08-31-1960 |

Street Address                                   City, State and ZIP Code

**3203 Hoagland Ave., Fort Wayne, IN 46807**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **INDIANA MICHIGAN POWER** | **500 or More** | **(800) 311-4634** |

Street Address                                   City, State and ZIP Code

**One Summit Square 110 E. Wayne St., Po Box 60, Fort Wayne, IN 46801**

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address                                   City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

| [ ] RACE | [ ] COLOR | [ ] SEX | [ ] RELIGION | [ ] NATIONAL ORIGIN |
|---|---|---|---|---|
| [X] RETALIATION | [ ] AGE | [X] DISABILITY | [ ] OTHER (Specify below.) | |

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **05-20-2008**    Latest **07-17-2008**

[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I am a qualified employee who worked at Indiana-Michigan Power as a Meter Reader from April 1988 to July 17, 2008. When I began working, I was accommodated for my disability because I need extra breaks and am sometimes tardy in the morning. In March 2008, I was written up for tardiness and job performance by Kevin Jenkins, Supervisor. Kerry Hall, Assistant, tried to explain to Kevin that I was usually accommodated for my disability. Union Representative Terry Geise was there to witness the incident. In May, I was written up again by Kevin and Kerri who told me that I was taking too many breaks. In May, I went on sick leave with pay. In June, I went on a leave of absence without pay. Abby from the Recovery Center denied me sick benefits, stating that the doctor would not cooperate with them. On June 9th, I faxed a letter to Tara Cooper, HR, and Kevin, explaining my medical problems, stating that I wanted sick benefits, and that I wanted time to recover. I was denied insurance and sick pay for some time. On July 16th, Tara, Steve Hyland (Union Steward), Kevin, and Kerri called me via conference call. Kevin told me that several times I had indicated that I worked full hours, but should have marked some of my hours as sick hours and some for work. Usually the supervisor corrects any mistakes with the payroll. Linda Woods has made a mistake on her payroll and the supervisor corrected her paperwork. She wrote that she worked eight hours, but she was on vacation. On July 17th, Kevin called me and told me that I was terminated for falsification of documents.

Therefore, I believe I was not accommodated for my disability. I also believe I was terminated because of my disability, and retaliated against for asking for sick benefits, in violation of the Americans with Disabilities Act of 1990, as amended, Title VII of the Civil Rights Act of 1964, as amended, and the Fort Wayne Ordinance G-21-78, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the above is true and correct. | |

Jul 29, 2008

_Date_

_Charging Party Signature_

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
_(month, day, year)_

July

FERNANDO C. SUAREZ JR.
NOTARY PUBLIC STATE OF INDIANA
ALLEN COUNTY
MY COMMISSION EXPIRES:   01/06/16

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| [X] FEPA | EO-0270-A8 |
| [X] EEOC | 24D-2008-00479 |

| City of Fort Wayne Metro Human Relations Commission | and EEOC |
|---|---|
| _State or local Agency, if any_ | |

THE PARTICULARS ARE _(If additional paper is needed, attach extra sheet(s))_:

I want this charge filed with both the EEOC and the State or local Agency, if any.  I
will advise the agencies if I change my address or phone number and I will cooperate
fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

NOTARY – _When necessary for State and Local Agency Requirements_

I swear or affirm that I have read the above charge and that it is true to
the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

## METROPOLITAN HUMAN RELATIONS COMMISSION

# DISMISSAL OF COMPLAINT AND NOTICE OF RIGHTS

**To:**   **Amanda J. Brownlee**

**Re:**   <u>**COMPLAINT DISMISSAL**</u>
**Amanda J. Brownlee vs. Indiana Michigan Power**
**MHRC No: EO-0270-A8**
**EEOC No: 24D-2008-00479**

**Date: August 2, 2010**

The Metropolitan Human Relations Commission has completed its initial investigation and a Determination Hearing Panel has concluded that there is insufficient evidence to warrant your case to proceed further and therefore renders a **NO PROBABLE CAUSE** finding.  <u>**ACCORDINGLY, YOUR COMPLAINT IS DISMISSED.**</u>  Please pay attention to the following information stated below:

1.   <u>**Right to Appeal Dismissal of Complaint and Time limit for Filing an Appeal**</u>

Please note that pursuant to Commission Rule 1-4.5, you have a right to appeal the dismissal of your complaint to the full Commission. You have <u>**ten (10) days**</u> to file a written motion for appeal. Your deadline for the motion for appeal is <u>**by 4:30 p.m., close of business day, August 11, 2010**</u>. If you do not meet this deadline, the Determination Panel's decision will become this agency's final action on your complaint. The final action of administrative agencies is subject to judicial review.

2.   <u>**Form, manner, number of copies, and contents of an Appeal**</u>

If you decide to request an appeal to the full Commission, you <u>MUST</u> put that request in the form of a written motion. You have the right to submit additional documentary evidence with your motion.  You **must** state the <u>GROUNDS</u> for your appeal in the written motion. Your grounds may include new information that could not have reasonably been known or available, and hence not submitted by you to the Commission during the investigation, or the reason(s) why you did not submit a rebuttal to the Respondent's answer.  We require two (2) copies of the written motion for appeal, addressed to the Commission, to be brought in person, mailed, or sent by electronic means (provided that the original and one copy is delivered to the Commission's office within five business days of the electronic receipt) to the offices of the Metropolitan Human Relations Commission, Room 680, City-County Building, One East Main Street, Fort Wayne, Indiana 46802.

3.   <u>**Processing of an Appeal**</u>

A copy of your motion for appeal will be sent to the Respondent. The Respondent has the right to submit written objections to the appeal to the Commission. The Commission will review your motion and the Respondent's written objections and respond in writing to all parties. The Commission will grant the request for an appeal hearing, deny the request, or refer the complaint for further investigation.

4. **Procedure following the Granting of an Appeal / Right to have Representation of Counsel if desired / Duty to Participate/ File Closure**

If the Commission grants your motion for appeal, a **public appeal hearing will be set before the full Commission**. You or your private attorney (if you have one) or both will be given the opportunity to explain why the Determination Panel's decision should be overturned. **You MUST contact our office no later than 4:30 PM on the Wednesday prior to your appeal hearing to confirm your appearance at the hearing.** If you do not contact our office by that date, your appeal hearing will be cancelled and the Determination Panel's decision will become this agency's final action on your complaint. Your file will be closed. The procedures regarding an appeal hearing format will be provided to you after an appeal has been granted. The Commission's Legal Counsel or other staff representatives or both will be present to defend and explain the findings of the Determination Panel. Be prepared for the possibility of detailed questioning by the Appeal Hearing Panel.

5. **Protocol for a decision following an Appeal**

Upon the completion of the submission of all evidence, testimonies, and arguments by the parties at the appeal hearing, the Commission will take either of the following action. The case may be taken under advisement and a decision issued within 30 days, or the Commission may render a decision at that moment, and provide a written order within 30 days.

6. **Seeking Substantial Weight Review from the EEOC**

Because your case is dual filed, there is an alternate option you may like to utilize. You have a qualified right of review by the Equal Employment Opportunity Commission ("EEOC") after the completion of Metro's appeal processes (our final action). You have fifteen (15) days, after receiving a decision of your appeal with Metro, to request this review in writing to the EEOC at 101 West Ohio Street, Suite 1900, Indianapolis, Indiana 46204-4203. The 15-day deadline is an EEOC requirement. Contact the EEOC at (800) 669-4000 for information regarding their review process, which is entirely distinct and separate from Metro's process.

7. **Commission's Staff Role / Conclusion**

It is important for you to fully understand the appeal process. Because of due process implications with any legal proceedings, the Commission reiterates your right to hire an attorney at any stage of our complaint process. The Commission staff is also available to give clarification of the process. Such clarification is not to be construed as the rendering of legal advice by the staff. No complainant should expect an attorney-client relationship with Commission staff. Law provides for no such relationship. If you have any questions, please feel free to contact our agency at 260-427-1146. Thank you for your continued cooperation.

Respectfully,
Metropolitan Human Relations Commission


Cc/file

*Approved by Gerald Foday, Executive Director*
*October 18, 2006*

2

*Metropolitan Human Relations Commission*
*One East Main Street, Room 680*
*City-County Building*
*Fort Wayne, Indiana 46802*

## BEFORE THE FORT WAYNE
### METROPOLITAN HUMAN RELATIONS COMMISSION

| | |
|---|---|
| STATE OF INDIANA ) | MHRC NO.   EO-0270-A8 |
| ) | |
| COUNTY OF ALLEN ) | EEOC NO.   24D-2008-00479 |

**AMANDA J. BROWNLEE**
3203 Hoagland Avenue
Fort Wayne, IN 46807

    *Complainant,*

**v.**

**INDIANA MICHIGAN POWER**     c/o    **Thomas H. Dawson, Manager**
One Summit Square                         **Labor Relations & EEO**
P.O. Box 60
Fort Wayne, IN 46801
    *Respondent.*

## THE DETERMINATION HEARING

**COMES NOW,** the undersigned members of the **Determination Panel** and pursuant to Commission Rule **1-4.4** do make the following determination:

### I.  JURISDICTION

On July 29, 2008, the Complainant, Amanda Brownlee, filed a complaint against Respondent, Indiana Michigan Power, alleging that Respondent discriminated against her and retaliated against her in violation of the Americans with Disabilities Act of 1990, as amended ("ADA"), Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and also in violation of Fort Wayne General Ordinance G-21-78 ("Ordinance"), as amended.

#### A. Timeliness

For a complaint to be "timely," Complainant must file with the Commission within 180 days of the last date of harm. The alleged incident(s) giving rise to these allegations began to occur on March of 2008. Since the last date of harm occurred on July 17, 2008, and the complaint was filed on July 29, 2008, within 180 days of the last date of harm, the timeliness jurisdictional requirement is met.

1



## BEFORE THE FORT WAYNE
## METROPOLITAN HUMAN RELATIONS COMMISSION

### B. Personal Jurisdiction

Respondent's place of business is located at 110 East Wayne Street, within the territorial boundaries of the City of Fort Wayne, State of Indiana. The Ordinance requires that the Commission exercise jurisdiction against employers with at least six (6) employees. The ADA and Title VII requires that an employer or covered entity have at least fifteen (15) employees. In other words, an employer must have fifteen (15) or more employees each day for a twenty week period during the year the discrimination occurred or the year prior to the discrimination. Because the Respondent had fifteen (15) or more employees for twenty weeks in the two-year period between July 17, 2006 and July 17, 2008, personal jurisdiction has been met.

### C. Subject Matter Jurisdiction

As indicated above, Complainant is alleging that the Respondent discriminated against her in violation of the ADA, Title VII, and the Ordinance. The Commission has authority to enforce both laws. Therefore, subject matter jurisdiction is met.

## II. THE CHARGE, SUMMARY OF RESPONSE AND REBUTTAL

The Commission's complaint process commences with the filing and acceptance of a charge. The charge is forwarded to the Respondent for an answer or response to the charge, including an invitation for both parties to enter into voluntary mediation. Following receipt of the response, the Commission makes pertinent provisions available to the Complainant for a rebuttal. If a Complainant fails to rebut, the Commission will make a determination on the record available to it, including any independent evidence acquired. Following a rebuttal or lack of, the Commission, utilizes any series of investigative tools to bring the investigation to as prompt a completion as resources dictate.

### A. Complainant's Charge

On July 29, 2008, Complainant Brownlee (hereinafter referred to as "Complainant") alleged and signed the following statement:

> I am a qualified employee who worked at Indiana-Michigan Power as a Meter Reader from April 1988 to July 17, 2008. When I began working, I was accommodated for my disability because I need extra breaks and am sometimes tardy in the morning. In March 2008, I was written up for tardiness and job performance by Kevin Jenkins, Supervisor. Kerry Hall, Assistant, tried to explain to Kevin that I was usually accommodated for my disability. Union Representative Terry Geise was there to witness the incident. In May, I was written up again by Kevin and Kerri who told me that I was taking too many breaks. In May, I went on sick leave with pay. In June, I went on a leave of absence without pay. Abby from the Recovery Center denied me sick benefits, stating that the doctor would not cooperate with them. On June 9th, I faxed a letter to Tara Cooper, HR, and Kevin, explaining my medical problems, stating that I

2

# BEFORE THE FORT WAYNE
## METROPOLITAN HUMAN RELATIONS COMMISSION

wanted sick benefits, and that I wanted time to recover. I was denied insurance and sick pay for some time. On July 16th, Tara, Steve Hyland (Union Steward), Kevin, and Kerri called me via conference call. Kevin told me that several times I had indicated that I worked full hours, but should have marked some of my hours as sick hours and some for work. Usually the supervisor corrects any mistakes with the payroll. Linda Woods has made a mistake on her payroll and the supervisor corrected her paperwork. She wrote that she worked eight hours, but she was on vacation. On July 17th, Kevin called me and told me that I was terminated for falsification of documents.

Therefore, I believe I was not accommodated for my disability. I also believe I was terminated because of my disability, and retaliated against for asking for sick benefits, in violation of the Americans with Disabilities Act of 1990, as amended, Title VII of the Civil Rights Act of 1964, as amended, and the Fort Wayne Ordinance G-21-78, as amended.

### B.    Respondent's Response to Complainant's Charge

The Respondent submitted a response to the Commission which is summarized as follows: Complainant was hired as a meter reader in April 1988 and worked in that classification until she was discharged on July 17, 2008. Complainant was terminated for "Falsification of Company Documents" when it was determined that she had been turning in her time sheets as if she had worked a full day. An audit of Complainant's work records from May 5 through May 19, 2008 indicated a great deal of time that Complainant was not performing her assigned tasks even though she continued to turn in eight hours of pay each day. On May 20, 2008, Complainant was interviewed regarding the discrepancies. At that time she had no reasonable explanation and was informed that the investigation would continue. Complainant called in sick the next work day and remained on sick leave until she was terminated.

The management team worked with Complainant to consider her requests for accommodation. Complainant requested to be allowed to start later and her work schedule was changed from 7:00am to 3:30pm to 7:30am to 4:00pm. Her supervisor even offered to allow her to take a one hour lunch break instead of the normal ½ hour. However, she declined. Furthermore, meter readers are allowed to take 15 minute breaks in the morning and afternoon.

Respondent is aware that Ms. Woods turned in her time sheets after a vacation day but put down that she had worked. When questioned, she insisted it was a mistake. Complainant has also made the same error and was warned in 2004 and 2005 for failing to properly record her vacation time and leaving work without permission. However, the most recent incidents involving Complainant's false time reporting were not a "mistake."

Complainant was paid sick pay from May 21st through May 28th, 2008. On May 29, 2008 her sick pay was suspended when she failed to provide adequate medical documentation for her absence. Following receipt of the required medical documentation her sick pay benefits were reinstated.

3

## BEFORE THE FORT WAYNE
## METROPOLITAN HUMAN RELATIONS COMMISSION

### C.      Complainant's Rebuttal

Complainant submitted a rebuttal to Respondent's Response which is summarized as follows: Complainant has been a diabetic since 1993 and also suffers from depression. There was an unwritten policy which allowed for flex time to work around appointments, children's activities, co-workers' funerals, etc. as long as the 8 hours were made up. Her supervisor told her that if she arrived to work late, she should record her time as sick or vacation. She realized falsification is an automatic termination. There were several times Complainant had to go home to use the restroom and shower. She always noted it down on her route break information, and posted it on the daily sign in and sign out log. When Complainant was asked about her time off, she was not aware of not making up the time. Complainant's sick benefits were restored in late June.

### . III.  SUMMARY OF INVESTIGATIVE PROCESS AND EVIDENCE

The Commission reviewed several documents and below is a summary of the evidence obtained during the investigation.

### A.      Employee Handbook (effective January 2006)
This document was provided by the Respondent. Page 13 of the handbook talks about attendance and punctuality. Page 34, discusses corrective discipline policies and procedures. It also lists prohibited offenses and the types of disciplinary action administered for violating policy.

### B.      Certificate of Disability and Medical Notes (Dated March 27, 2007 and June 6, 2008)
This document was provided by Complainant. In 2007, Depression/Anxiety was listed as a primary diagnosis for Complainant. A doctor's visit from July 2, 2008, diagnosed Complainant with diabetes type II, depression with anxiety, hyperlipidemia mixed, and hypertension essential.

### C.      Warning Notices
Document dated May 13, 2004, provided by Respondent. Complainant received a warning notice for failure to properly report vacation time and leaving the job site early without permission. Notice was signed by Supervisor Shirley Hunt ("Hunt").

Document dated February 2, 2005, provided by Respondent. Complainant received a warning notice for failure to properly record vacation time. Notice was signed by Hunt.

Document dated March 28, 2008, provided by Respondent. Complainant received a warning notice for tardiness and unsatisfactory job performance. Notice was signed by Supervisor Kevin Jenkins ("Jenkins").

### D.      Discharge Notice (July 17, 2008)
This document was provided by Respondent. Complainant received a discharge notice for falsifying company documents. Notice signed by Jenkins.

4



## BEFORE THE FORT WAYNE
## METROPOLITAN HUMAN RELATIONS COMMISSION

**E.     Correspondence from Respondent to Complainant (May 29,2008)**

This document was provided by Complainant and Respondent. Respondent stated that Complainant's review was completed and it was determined she was not eligible to receive continued sick benefits. Complainant was instructed to contact the human resources department if she had questions regarding her benefits.

**F.     Correspondence from Respondent to Complainant (June 13, 2008)**

This document was provided by Complainant and Respondent. This letter stated that in order for Respondent to update Complainant's disability file and continue her sick benefits, Complainant's physician needed to complete a Behavioral Health Certificate of Disability form and physician statement. The letter further stated that the completed form needed to be returned as soon as possible to ensure compliance with sick pay benefits.

**G.     Letter to Commission from Complainant (November 11, 2009)**

This document was provided by Complainant. Complainant indicated that in 2009, her union helped her get her job back. Complainant's job, seniority, and insurance were restored after she passed a medical exam.

## IV.    ANALYSIS

Fort Wayne City Code, Ordinance G -21-78 ("Ordinance") makes it unlawful for an employer to discriminate against an individual on the basis of their disability.    Because the Ordinance, like the ADA, parallels Title VII in its proscription of discrimination based upon expressed grounds (*e.g.*, race, sex, color, religion or national origin), federal decisions interpreting the ADA are persuasive when reviewing a charge of discrimination under the Ordinance. A violation of the ADA, as amended and Fort Wayne Ordinance G-21-78, as amended may be established by either direct or indirect (circumstantial) evidence.

### Direct Evidence

Direct evidence of discrimination is that which, if accepted by the Determination Panel, would prove the particular fact in question without reliance upon inference or presumption. The evidence must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question. When a Complainant proceeds under the direct proof method, allegedly discriminatory statements are relevant only if they are both made by the decisionmaker and related to the employment decision at issue. They must also be made contemporaneously with the adverse employment action of which the employee complains. Simply stated, "direct evidence" is the proverbial "smoking gun" which demonstrates that the employer acted with discriminatory conduct in its employment decision.    In this case, there is no direct evidence of discrimination on grounds of disability, retaliation, or Respondent failed to reasonably accommodate Complainant.

5

## BEFORE THE FORT WAYNE
## METROPOLITAN HUMAN RELATIONS COMMISSION

### I. Disparate Treatment (Disability)

To establish a claim of disability discrimination through the indirect method of proof, Complainant must utilize the familiar burden shifting analysis first set out in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). In that analysis, Complainant bears the initial burden of establishing a *prima facie* case of discrimination.

With respect to indirect evidence, establishment of a prima facie case of termination requires evidence as to the following four elements: (1) Complainant is disabled within the meaning of the ADA and the Ordinance; (2) Complainant is a qualified employee; (3) Complainant suffered an adverse employment action; and (4) Similarly situated (non-disabled) employee(s) received favorable treatment.

### 1.    Complainant is disabled within the meaning of the ADA and/or the Ordinance

To be disabled within the meaning of the ADA and the Ordinance, the Complainant has to show first she is disabled, and that she can perform the essential functions of her job with or without reasonable accommodation. In other words, Complainant must show that she is a qualified individual with a disability.

Complainant has an ADA disability if she can show the following: a) she has a mental or physical impairment that substantially limits one or more major life activities; or b) she is regarded as having such impairment; or c) she has a record of such impairment. If Complainant cannot establish that she is disabled within the meaning of the ADA, the Commission's inquiry ends.

A major life activity means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. Substantially limits means (1) unable to perform a major life activity that the average person in the general population can perform; or (2) significantly restricted as to the condition, manner or duration under which an individual can perform a major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity. In determining whether an individual is substantially limited in a major life activity, the following factors should be considered: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment.

In this case, the Complainant provided a written statement where she identified her disabilities as diabetes and depression. Complainant stated that she has been diabetic since 1993. Complainant indicated she takes a variety of medicines including insulin shots and has to take numerous restroom breaks. Complainant's physician stated that she suffers from depression, diabetes, hypertension and Hyperlipidemia. Complainant stated that even while on medications she can walk for only two to three hours, her vision is sometimes blurry, she experiences dizziness, headaches, and needs frequent restroom breaks. Since Complainant has a record of her disability and Respondent was aware of the disability, Complainant has met this first element.

6

BEFORE THE FORT WAYNE
METROPOLITAN HUMAN RELATIONS COMMISSION

**2.    Complainant is a qualified employee**

Next, the Commission examined whether Complainant was qualified for the position of Meter Reader at the time of her write-ups or termination. A qualified employee with a disability is an individual who, with or without reasonable accommodation, can perform the essential functions of the job in question.

The investigation found that Complainant was not a qualified employee. Evidence supports Respondent's contention that Complainant received a written warning for tardiness and unsatisfactory job performance, and Complainant was terminated for falsifying company documents. Complainant's employee file showed that a Warning Notice was issued to Complainant on March 28, 2008 for tardiness. More specifically, Complainant arrived to work on several occasions after her designated flex start time of 7:30am. Complainant's file also contained a Discharge Notice dated July 17, 2008. This particular document indicated that Complainant turned in a timesheet showing she had worked a 40 hour work week when in fact she had large gaps in time when she did not work. She did not indicate sick time or vacation time on the timesheet. Complainant's employee file also showed she received Warning Notices on May 13, 2004 and February 2, 2005, for failing to properly report and record vacation time and leaving the job site early without permission.

Respondent's policy states that recurring absenteeism and/or tardiness will subject the employee to disciplinary action, up to and including discharge. Furthermore, according to Respondent, violating the rules of conduct is grounds for disciplinary action varying from written warning to discharge, depending upon management's judgment as to the seriousness of the offense. Since Complainant violated Respondent's policy, she is not considered a qualified employee. Furthermore, since Complainant is not a qualified employee, she does not make out a prima facie case of discrimination. Therefore, the Commission will conclude its disparate treatment analysis.

**II. Failure to Accommodate (Disability)**

To establish a claim of disability discrimination through the indirect method of proof, Complainant must utilize the familiar burden shifting analysis first set out in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). In that analysis, Complainant bears the initial burden of establishing a *prima facie* case of discrimination.

With respect to indirect evidence, establishment of a prima facie case of a failure to accommodate requires evidence as to the following four elements: (1) Complainant is disabled within the meaning of the ADA and the Ordinance; (2) Complainant is a qualified employee; (3) Respondent was aware of Complainant's disability and need for accommodation; and (4) Respondent failed to reasonably accommodate the disability.

As stated earlier, Complainant has met the first element of her prima facie case. However, the Commission determined that Complainant was not a qualified employee. Since Complainant has failed the second element of her prima facie case, the analysis ends at this point. However, for the sake of argument, even if evidence could show that Complainant was a qualified employee, supporting documentation would demonstrate that Respondent succeeded in reasonably accommodating Complainant's disability.

7

# BEFORE THE FORT WAYNE
## METROPOLITAN HUMAN RELATIONS COMMISSION

An employer is required to make a reasonable accommodation to the known disability of a qualified applicant or employee if it does not impose an undue hardship on the operation of the employer's business. However, an employer is not required to lower quality or production standards to make an accommodation. Reasonable accommodations are adjustments or modifications provided by an employer to enable people with disabilities to enjoy equal employment opportunities. Accommodations vary depending upon the needs of the individual applicant or employee. Not all people with disabilities (or even all people with the same disability) will require the same accommodation.

In this case, Complainant stated her disability causes her to take frequent restroom breaks and arrive late to work. Respondent and Complainant both agree that Complainant requested to be allowed to start later than the regular time of 7:00 am. Complainant's work schedule was changed from 7:00 am to 3:30 pm to 7:30 am to 4:00 pm. Complainant was also allowed to take a one hour lunch break instead of the normal half hour given to Meter Readers. It is Respondent's contention that Complainant was afforded a reasonable accommodation. The investigation confirmed this. Additionally, the Commission found no evidence to suggest that Complainant requested any other accommodations.

## III. Retaliation

To establish a claim of retaliation through the indirect method of proof, Complainant must utilize the familiar burden shifting analysis first set out in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). In that analysis, Complainant bears the initial burden of establishing a *prima facie* case of discrimination.

To establish a prima facie case of retaliation the complainant must demonstrate the following: (1) Complainant engaged in a statutorily protected activity; (2) Complainant suffered an adverse employment action; and (3) Complainant was treated worse than a similarly situated employee who did not engage in a statutorily protected activity or there is a causal connection between the two events.

### 1. Complainant engaged in a statutorily protected activity

In addition to the protections against retaliation that are included in all of the laws enforced by the Equal Employment Opportunity Commission, the ADA also protects individuals from coercion, intimidation, threat, harassment, or interference in their exercise of their own rights or their encouragement of someone else's exercise of rights granted by the ADA. Covered individuals are people who have opposed unlawful practices, participated in proceedings, or requested accommodations related to employment discrimination based on race, color, sex, religion, national origin, age, or disability. Individuals who have a close association with someone who has engaged in such protected activity also are covered individuals.

Complainant alleges that she was denied sick benefits after she went on sick leave due to her disability. The Commission will consider that Complainant requested an accommodation by asking for sick pay benefits because of her disability. This element has been met.

8



## BEFORE THE FORT WAYNE
## METROPOLITAN HUMAN RELATIONS COMMISSION

### 2. Complainant suffered an adverse employment action

Adverse employment action has been defined quite broadly in the Seventh Circuit Federal Court of Appeals, and that broad interpretation has been adopted by this Commission. In some cases, for example when an employee is fired, or suffers a reduction in benefits or pay, it is clear that an employee has been the victim of an adverse employment action. But an employment action does not have to be so easily quantified to be considered adverse for our purposes. Adverse employment action is not limited solely to loss or reduction of pay or monetary benefits. It can encompass other forms of adversity as well.

Evidence obtained confirms Complainant suffered an adverse employment action after she requested sick pay benefits. Complainant's employee file contained correspondence from Respondent to Complainant dated May 29, 2008, stating that Complainant's sick pay benefit was terminated and she was placed on personal leave of absence. In this case, Complainant has met this element.

### 3. Complainant treated worse than similarly situated employee or causal connection

A plaintiff may demonstrate that another employee is "similarly situated" by showing that there is someone who is directly comparable to Complainant in all material respects. In determining whether employees are similarly situated, the Commission must look at all relevant factors, the number of which depends on the context of the case. In general, the concept of "similarly situated" means that the persons who are being compared are so situated that it is reasonable to expect that they would receive the same treatment in the context of a particular employment decision. In a discharge case, similarly situated individuals are usually those who have been charged with misconduct identical or similar in kind or magnitude to that which the Complainant is accused of.

In this case, similarly situated individuals would be Meter Readers who violated Respondent's policy by falsifying their timesheets, and received Warning Notices for tardiness and unsatisfactory job performance. Additionally, individuals outside the Complainant's protected class would be those who did not engage in a statutorily protected activity. During the investigation Respondent was asked to supply the Commission with the names of all employees who engaged in conduct similar to Complainant's. The investigation revealed there were employees who were tardy and other employees who had falsified their timesheets. The investigation did not, however, find any employees who had engaged in the above conduct and were not disciplined or terminated.

Complainant did mention an individual who she felt was similar situated. Complainant stated that coworker Linda Woods ("Woods") falsified her timesheet but was not terminated. The investigation determined that Woods did not engage in similar conduct as Complainant. While it was determined that both Woods and Complainant turned in timesheets in the past and mistakenly indicated they should have been paid for normal pay while in fact "vacation" pay should have been recorded, Complainant had been warned twice before about her failure to report vacation time. Woods record contained only one warning. Since Woods conduct was not similar to Complainant's conduct, she is not considered a similarly situated individual. This element has not been met.

9

## BEFORE THE FORT WAYNE
## METROPOLITAN HUMAN RELATIONS COMMISSION

The Commission did look at the Respondent's legitimate, nondiscriminatory reasons for administering Complainant warning notices, delaying Complainant sick pay benefits, and terminating Complainant. The investigation did not find that Respondent's reasons were pretextual. In this case, evidence showed that Respondent has a practice of administering Warning Notices to employees who demonstrate excessive tardiness. Respondent has also terminated other individuals for falsifying company timesheets; and finally, Respondent has denied or delayed sick pay benefits to employees who have not submitted the requested documentation. Complainant did admit in her rebuttal that she did receive sick pay benefits after information was provided to the Respondent. In this case there was no evidence of pretext.

It should be noted that on or around November 11, 2009, the Commission received information from Complainant stating that due to an Arbitration Agreement between Complainant, Local Union 1392, and Respondent, Complainant's employment was restored including her seniority.

## III. **CONCLUSION**

Based upon these findings, **no probable cause** exists to believe that Respondent violated the Americans with Disabilities Act of 1990, as amended, or Fort Wayne Ordinance G-21-78, as amended. Pursuant to Commission Rule 1-4.4(c)(1)(A) this case is dismissed as lack of probable cause.

**SO ORDERED** on this 30th day of July 2010.

_____
Commissioner Larry Wardlaw

_____
Commissioner Paul Morrison

10

[American Electric Power logo]

777 Hopewell Drive Heath Ohio 43056   Phone: 1-888-237-2363 option 3 extension:   4046   Fax: 1-866-373-6830   Attention: Abby Mulholland

**EMPLOYEE NAME:** _Amanda Brownlee_ **EMPLOYEE ID OR SOCIAL SECURITY #:** _____

Does the patient's condition qualify under the FMLA Categories described? (documentation provided that has a detailed description of the following)
_ Hospital Care (date_____)   _ Chronic Condition Requiring Treatment   _ Absence Plus Treatment
_ Permanent/Long-term condition   _ Pregnancy   _ Multiple Treatments (non-chronic)

---

## CONDITION HISTORY

PRIMARY DIAGNOSIS/ICD9 CODE: _Depression/Anxiety   300.4_

OTHER DIAGNOSIS/ICD9 CODE: _____

SUBJECTIVE FINDING: _Stress Level ↑_

OBJECTIVE FINDING (S) AND TEST(S): _____

PATIENT'S CONDITION IS THE RESULT OF (CHECK ALL THAT APPLY):
Occupational __   Non-Occupational __   Date of Surgical Procedure (if applicable): _____

DATE OF FIRST TREATMENT: _2-26-07_   DATE OF LAST TREATMENT: _3-19-07_
DATE OF NEXT TREATMENT: _4-10-07_   DATE RELEASED FROM CARE: _Pending_

---

## PROGNOSIS

HAVE YOU RELEASED PATIENT TO RETURN TO WORK?
_ Yes - Date of Return _____ Full Duty ___   Restricted Duty ___ (see below) Own Occupation ___   Other Occupation ___

X No - If "no", Disability Date From:_____ To:_____   Expected Full Duty Release Date:_____

List of Current Medications: _Effexor XR 150_

PROGNOSIS:   Good [X]   Fair [ ]   Guarded [ ]   Poor [ ]

---

## PHYSICAL CAPABILITIES

PATIENT RELEASED TO RESTRICTED DUTY, PLEASE COMPLETE THE PATIENT'S ABILITY TO:

Hours (circle)

| | | | |
|---|---|---|---|
| Sit | 0 1 2 3 4 5 6 7 8 9 10 11 12 | Continuously | Intermittently |
| Stand | 0 1 2 3 4 5 6 7 8 9 10 11 12 | Continuously | Intermittently |
| Walk | 0 1 2 3 4 5 6 7 8 9 10 11 12 | Continuously | Intermittently |
| Push/Pull | 0 1 2 3 4 5 6 7 8 9 10 11 12 | Continuously | Intermittently |
| Climb | 0 1 2 3 4 5 6 7 8 9 10 11 12 | Continuously | Intermittently |
| Twist/Bend/Stoop | 0 1 2 3 4 5 6 7 8 9 10 11 12 | Continuously | Intermittently |
| Reach above shoulder | 0 1 2 3 4 5 6 7 8 9 10 11 12 | Continuously | Intermittently |
| Operate Motor Vehicle | 0 1 2 3 4 5 6 7 8 9 10 11 12 | Continuously | Intermittently |

_N/A_

Patient's ability to lift/carry: (check)

| | 0% | 1-35% | 35-66% | 67-100% |
|---|---|---|---|---|
| Up to 10 lbs. | [ ] | [ ] | [ ] | [ ] |
| 11 to 20 lbs. | [ ] | [ ] | [ ] | [ ] |
| 21 to 50 lbs. | [ ] | [ ] | [ ] | [ ] |
| 51 to 100 lbs. | [ ] | [ ] | [ ] | [ ] |
| Over 100 lbs. | [ ] | [ ] | [ ] | [ ] |

Patient's ability to perform repetitively: (circle)

| | Right Hand | Left Hand |
|---|---|---|
| Fine finger movement | Yes No | Yes No |
| Eye/hand movement | Yes No | Yes No |
| Dominant hand | Right ___ | Left ___ |

_N/A_

Patient can work a total of ___0___ hours per day?

PLEASE EXPLAIN WHY THE EMPLOYEE IS UNABLE TO PERFORM RESTRICTED/LIGHT DUTY WORK?
_Pt unable to cope with working at this time R/t Depression state_

PHYSICIAN'S SIGNATURE: _A Hanna MD_   DATE: _3-27-07_
ADDRESS: _4306 Lake Ave_   PHONE: _260 422 1906_
_Ft Wayne, IN   46815_   FAX: _260 422 1925_

revised 04-12-2006

## Certificate of Disability/Employee Statement

Employee's Name __AMANDA J BROWNLEE__
             (First)         (MI)             (Last)

Social Security Number __3177 87423__   Expected RTW Full Duty: __7/7/08__
Phone Number: __744 0220__        Expected RTW Restricted: _____

Brief Description of Illness or Injury (include affected areas): _____
__Psychologically disabled due to mixed depression__
__and anxiety.__

Primary Physician: __ASHRAF HANNA MD__
Date Last Seen: __6/6/08__    Next Appointment: _____

Other Physicians Seen For The Conditions:
_____ Date Last Seen: _____
_____ Date Last Seen: _____

Describe Treatment To Date: __Medication__
__will start counselling 6/9/08__
_____

Comments/Remarks: _____

**EMPLOYEE AUTHORIZATION FOR PHYSICIAN RELEASE OF PROTECTED HEALTH INFORMATION UNDER HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT OF 1996 AND/OR FAMILY MEDICAL LEAVE ACT OF 1993.** I request and hereby authorize the physicians or other health care providers named in this statement (and their affiliates) to release to representatives of my employer (in the American Electric Power system) all information about my above-referenced medical condition that may directly or indirectly affect my ability to work, including but not limited to records, reports, charts, x-rays and/or MRIs. I acknowledge and further authorize my employer (in the AEP system) to disclose this information to employees of the AEP system and any third-party insurance carrier or claims administrator who is involved in the processing and/or administering of claims for benefits under the American Electric Power System's sick pay plan or Workers' Compensation program or the American Electric Power System Long-Term Disability Plan (the "Programs"). I further acknowledge that information disclosed by a physician or other health care provider pursuant to this authorization may be subject to redisclosure by the recipient and is no longer protected by the health information privacy rules issued under the Health Insurance Portability and Accountability Act. I understand that neither my physicians nor other health care providers may condition treatment on my signing this or any other authorization unless the physician or other health care provider is providing health care solely for the purpose of creating protected health information for disclosure to a third party (such as if the American Electric Power system would require such otherwise protected health information to be provided by a physician or other health care provider of its choosing in connection with processing and/or administering my claim for benefits under one or more of the Programs).

**Expiration.** This authorization shall expire with respect to a particular physician upon my return to work without restrictions.

**Right to Revoke.** I acknowledge that I have the right to revoke this authorization, provided that the revocation is in writing, delivered to the affected physician or other health care provider, except that such revocation shall not affect any action that such physician or other health care provider has already taken in reliance on the authorization. I understand that revocation of this authorization may impair my ability to obtain benefits under one or more of the Programs.

Employee Signature: __Amanda Brownlee__ Date: __6/3/08__
A photo static/fax copy of this authorization shall be considered as effective and valid as the original.

H/Internal/ IDM Center/COD102003

**AEP**
**AMERICAN®**
**ELECTRIC**
**POWER**

## Certificate of Disability/Attending Physician Statement
777 Hopewell Drive, Heath OH 43056
Fax: 740-349-4039          Attention: _____
Phone: 1-888-237-2363 option 3

Employee Name: Amanda Brownlee   Social Security Number: 317 78 7623

| Does the patient's condition qualify under any of the FMLA categories described? |
|---|
| *An attached document is provided that has a detailed description of the following:* |

Hospital Care (Date: _____ )          Chronic Condition Requiring Treatment
Absence Plus Treatment                   Permanent/Long-term Condition
Pregnancy                                Multiple Treatments (Non-Chronic)

Occupational                     Date of First Treatment_____
— Nonoccupational                Date of Last Treatment_____
Surgery Date:_____           Date of Next Treatment_____

— PrimaryDiagnosis/**ICD9 Code**        300.4
— Other Diagnosis/**ICD9 Code**         250.02

— Subjective Finding:_____ Stress, depression _____

— Objective Finding and Tests:_____

— Prescription Medications:____ Effexor xR 150
_____ Levemir 55u bid _____

Prognosis:    ☐Good ☑Fair ☐Guarded ☐Poor

**Patient is Released to Full Duty On (Date)_____**

**Patient Released to Light Duty with the Following Restrictions/Limitations: (Date)_____**

| Body Movements | Body Posture | Lifting | Carrying | Hand Coordination |
|---|---|---|---|---|
| Hours | Hours | | | R/L |
| ☐Bending ___ | ☐Sit ___ | ☐None | ☐None | ☐Grasping |
| ☐Twisting ___ | ☐Stand ___ | ☐0-10 Lbs | ☐0-10 Lbs | ☐Fine Manipulation |
| ☐Overhead Reach ___ | ☐Walk ___ | ☐11-19 Lbs | ☐11-19 Lbs | ☐Rotation |
| ☐Horizontal Reach ___ | ☐Kneel ___ | ☐20-49 Lbs | ☐20-49 Lbs | |
| ☐Squeezing ___ | ☐Climb ___ | ☐50-75 Lbs | ☐50-75 Lbs | **Expected Full Duty Release** |
| ☐Keyboarding ___ | | ☐Over 75 Lbs | ☐Over 75 Lbs | |
| ☐Driving ___ | | | | _____ |

Please list any other limitations to job performance._____

✸ **Employee is unable to work.  Please explain why the employee is unable to perform light duty work?** _____
_____

Physician's Signature: A H Hanna    Date: 6/6/08
Address: 4306 Lake Ave    Phone: 260-422-1906
_____   Fax: _____

**Rendering Provider: Hanna MD, Ashraf H**
**Practice: Ashraf H Hanna MD**
**Address: 4306 Lake Avenue, Fort Wayne, IN, 46815-7222  Phone: (260)422-1906**

**Visit Date: 7/2/2008**

**Patient: Brownlee, Amanda J**
**3203 Hoagland Avenue, Fort Wayne, IN, 46807**
**Medical Record #:    DOB: 8/31/1960   Sex: Female**

**DX**
(250.02) - C - DIAB UNCOMP TYPE II UNCONTRD
(300.4) - C - DEPRESSION W/ANXIETY
(272.2) - C - HYPERLIPIDEMIA MIXED
(401.9) - C - HYPERTENSION ESSENTIAL - UNSPEC

**Return Visit After** 1 weeks and as needed

**New Medication**
Lantus 100 unit/mL Sub-Q; 50 Units; Subcutaneous; BID; 30 days; Qty: 30 ml [7/2/2008 - 8/1/2008]

Cymbalta 30 samples

**Services Ordered**
Refer to Diabetes education ASAP

**Specific Instructions**
Return to work 7/28 with restroom accommodations as recommended to BMI

**Patient Instruction**
Check BS q ac & hs

Provider: Hanna MD, Ashraf H

American Electric Power
777 Hopewell Drive
Heath, OH 43130-1581
Phone: 1-888-237-2363
Fax: 740-349-4039



May 29, 2008

Ms. Amanda Brownlee
3203 Hoagland Avenue
Ft. Wayne, IN 46807-1919

Re: Sick Pay Policy

Dear Ms. Brownlee,

The Recovery Center has reviewed your recent request for continued sick pay benefits. We
have completed the review and have determined you are not eligible to receive this benefit.
Therefore, effective May 29, 2008 your sick pay benefit was terminated and you were placed
on a personal leave of absence

As defined in the American Electric Power Sick Pay Policy,
"When Benefits End. Generally, benefits under the policy will terminate on the earliest of
the following dates:

- "You fail to submit, when requested, sufficient written objective medical information
  relating to your illness or injury which supports a functional impairment preventing
  you from performing your occupation or a reasonable employment option".

As defined in the Administrative & General Benefits, "Life Events and Your Coverage:
You begin unpaid leave or absence other than FMLA, Medical, Vision and Dental coverage
ends the last day of the month your leave begins, unless you and/or your dependents continue
coverage under COBRA." You will receive notice of COBRA election under separate cover.

Should you have additional information regarding your benefits or have questions, please
feel free to contact our office or your Human Resource Department.

Sincerely,

Abby L. Mulholland
Integrated Disability Specialist
Recovery Center

**AEP**

**AMERICAN®
ELECTRIC
POWER**

**American Electric Power**
777 Hopewell Drive
Heath, OH 43056
AEP.com

June 13, 2008

Ms. Amanda Brownlee
3203 Hoagland Avenue
Fort Wayne, IN 46807-1919

Dear Amanda:

In order to update your disability file and continue your sick leave benefits, please find enclosed a Behavioral Health Certificate of Disability form. Please complete the employee statement. This form should be taken to your psychiatrist/counselor to complete the attending physician statement. The form is to be return by 06/23/2008.

Certificate of Disability forms should be completed after each session and faxed to my attention at 1-866-373-6830. The completed form should be returned as soon as possible to ensure compliance with sick pay benefits.

If you have questions, please contact the HR Recovery Center or your Human Resources Manager.

Sincerely,

Abby L. Mulholland, CPDM
Claims Specialist
AEP Recovery Center

Enclosure

November 11, 2009

To Whom It May Concern:

I was fired from AEP July 2008.
I was accused of falsification of records.
They said I lied on my payroll sheet.
In 2009, my union got my job back
showing I made a mistake in coding
it - a day I was sick. My job
will Be restored after passing a medical
exam. Seniority will Be included, But
I did not get my Back pay.
I have no other agreement with AEP
besides getting my job with
seniority and insurance back

Sincerely

Amanda J Brownlee

To Metropolitan Human Relations
Commission          8-6-2010

MHRC NO-EO-0270-AB
EEOC NO- 24D-2008-00479          08-11-10P01:25 RCVD

This is my written notice to appeal the dismissal of my claim (my written notice)
My daily time was posted correctly on sign-in sheets
The grounds I'm appealing to you are as follows:
Definition of falsification - includes "the act of producing something that lacks authenticity with the intent to commit fraud or deception"
I did not try to decieve any thing on payroll sheets each time I was written up. Each warning of payroll was a mistake, in posting May 2004, FEB 2005, and May 2009, 3 mistakes in posting payroll when "AEP" knew I had a hard time in the morning on a computer because my eyes would get Blurry due to my diabetes. On the charge of leaving without permission FEB 2005. I had "wet" pants and my supervisor was not there to report to. My job was completed and the time was made up. It was and still a flex dept.

all of these incidents should not Be seen as recurring as stated in the Company handBook. 3 posting payroll mistakes in 3 to 5 years.

In March 2008 I told AEP I was having trouble (Side Effects) again w/ my meds. I did not have flex time of 7 or 7:30 am start time. All readers change hours because of the seasons. I have asked numerous times of starting work at 8:00 am so I wouldn't been seen as a tardy person. Now since I got my job back, my hours are 8-5pm 1 hour lunch. This was with the union help for them to accomodate me. My HR records will show I was working sick and still completing my daily tasks and assignments. This along with several breaks and amaking up time. I was more than qualified during that season. When given a warning Rev. Jenkins said "don't worry about it, we understand, will work with you. Trusting those statements I continued working instead of talking time off for sick. This is reading 3-400 mtrs a day. The dept was short staffed and call-ins were also written up as warnings or verbal by supervisors.

## Failure to Accomodate

As stated would not change my time 2 start. did not offer FMLA when they knew "something" was wrong. Did not ask me to see a company doctor. and ignoring or not taking serious the fact I was sick. My file will also show when I did go on sick leave in May, there company outside chrise told them I was under a chemical imbalance and she was also the authorization to get my sick pay and insurance back. It was not AEP and my leave of abscence papers will show that also but I can't get it from Personnel.

USDC IN/ND CASE 1:11-cv-00097-JVB-RBC document 1 filed 03/22/11 page 29 of 60

In the response they gave they offered
me 1 hour lunch and I refused - this is incorrect
as my personnel record also shows a letter
from my doctor stating I need 45 to 1 hr
lunch. Also in May 2009 I told them I
needed to take some time off and I did call in
sick, went on sick leave, and they waited
til July to terminate me when I was due
back the end of the month with a doctor
statement? Why wait 2 months for a
falsification charge even when I'm on a
leave of absence without insurance or pay?

There was no intent to deceive anyone - I was
sick, working sick, telling my job I was sick
in March, May and June and continued
working so I would not lose my job. They
did not want to deal with a meter reader
who did not work till lunch, or 15 breaks and or
Sat. overtime as all the others do.

Retaliation → I was treated worse. The records
and Linda Woods as others will tell you supervisors
never warned them about a "mistake" on time -
sheets. All payroll mistakes would be corrected
by Kerry Hall and corrected documents were placed
on your desk. It was common trust to know,
no reader was falsifying records.

A new manager in our dept found our "uncommon" procedures after she fired me. Linda was never warned about her timesheet and I was given corrected timesheets on vacation, and sick as well as all meter readers. Again my personnel pay rolls sheets will show Kerry's corrections. Of course now, he is no longer able to perform that job.

Please hear my case. As my mom would say if it looks like a duck, it's a duck. This was a "made-up" charge to get rid of me. Again, they did not want to deal with a employee who has to stop for restrooms, eat lunch that takes an hour and who could not report to work in winter at 7: or 7:30 am and in summer at 6:30 ak 7:00am. Bonus checks were given at the end of the year based on # of meters read. That has changed. They want all the ducks to walk and quack the same But everyone is different But and we all can do the job it maybe a different way But the need to respect a person's weakness is much greater than degradation. Sincerely, Amanda Brownlee

**Fort Wayne Area**

**Field Revenue Operations**

Correction (handwritten)

| Name: *Linda Woods* | PayPeriodEnds: | 6/29/2008 | MEALS: | | Absence Frequency: |
|---|---|---|---|---|---|

Remarks:

| CALENDAR DATES ----> | WO#/Other/Loc | Mon 16 | Tue 17 | Wed 18 | Thu 19 | Fri 20 | Sat 21 | Sun 22 | Mon 23 | Tue 24 | Wed 25 | Thu 26 | Fri 27 | Sat 28 | Sun 29 | ID Cd / ID | TOT HRS | STEP UP RATE | Account Code | ABM Activity |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **OVERTIME PAY** | | | | | | | | | | | | | | | | Dept ID 10504 | | | | |
| Read Billing Meters - OT | | | | | | | | | | | | | | | | OT | 0.0 | | 9020002 | 251 |
| Meter Reader StepUp Hours - FIELDNET - OT | | | | | | | | | | | | | | | | OT | 0.0 | | 9020002 | 251 |
| Meter Reader StepUp Hours - SPECIALIST - OT | | | | | | | | | | | | | | | | OT | 0.0 | | 9020002 | 251 |
| wires down | | | | | | | | | | | | | | | | OT | 0.0 | | 5930000 | 228 |
| DNP - Disconnect/Reconnect - OT | | | | | | | | | | | | | | | | OT | 0.0 | | 9030000 | 252 |
| DNP - Disconnect/Reconnect - Double Rate | | | | | | | | | | | | | | | | OTD | 0.0 | | 9030006 | 252 |
| **REGULAR PAY** | | Mon | Tue | Wed | Thu | Fri | Sat | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Sun | Code | | | | |
| Check Read - Respond to Customer Inquires | | | | | | | | | | | | | | | | REG | 0.0 | | 9030001 | 239 |
| Connect / Disconnect --Field Orders | | | | | | | | | | | | | | | | REG | 0.0 | | 9020004 | 239 |
| Disconnect / Reconnect --DNP | | | | | | | | | | | | | | | | REG | 0.0 | | 9030006 | 252 |
| Read Billing Meters | | | | | | | | | | | | | -8 | | | REG | -8.0 | | 9020002 | 251 |
| Maintain Fleet | | | | | | | | | | | | | | | | REG | 0.0 | | 9030000 | 432 |
| Safety Programs | | | | | | | | | | | | | | | | REG | 0.0 | | 9030000 | 322 |
| Time Sheets | | | | | | | | | | | | | | | | REG | 0.0 | | 9030000 | 341 |
| Wires down | | | | | | | | | | | | | | | | REG | 0.0 | | 593000 | 228 |
| UUE - Excessive Use | | | | | | | | | | | | | | | | REG | 0.0 | | 5870000 | 255 |
| Change or Remove Meter | | | | | | | | | | | | | | | | REG | 0.0 | | 5860000 | 248 |
| Zero Use - Test Meters | | | | | | | | | | | | | | | | REG | 0.0 | | 9020002 | 259 |
| Vacation from 04-05-07 | | | | | | | | | | | | | | | | RDY | 0.0 | | 9020002 | 251 |
| Meter Reader Step Up - FIELDNET | | | | | | | | | | | | | | | | REG | 0.0 | | 9020002 | 251 |
| Meter Reader Step Up - SPECIALIST | | | | | | | | | | | | | | | | | 0.0 | | 9020002 | 251 |
| VACATION | | | | | | | | | | | | | 8 | | | VAC | 8.0 | | | |
| PERSONAL DAY OFF | | | | | | | | | | | | | | | | PDO | 0.0 | | | |
| SICK | | | | | | | | | | | | | | | | SCK | 0.0 | | | |
| HOLIDAY | | | | | | | | | | | | | | | | HOL | 0.0 | | | |
| Restricted duty | | | | | | | | | | | | | | | | SUSP | 0.0 | | | |
| **TOTAL REGULAR HOURS** | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 0.0 | | | |
| **STORM HOURS** | | | | | | | | | | | | | | | | | | | | |
| Storm Hours - OVERTIME-DMS8II002 | | | | | | | | | | | | | | | | OT | 0.0 | | 5930000 | 228 |
| Storm Hours - REGULAR-DMS8II002 | | | | | | | | | | | | | | | | REG | 0.0 | | 5930000 | 228 |
| wires down | | | | | | | | | | | | | | | | OT | 0.0 | | 5930000 | 228 |
| Storm Hours - REGULAR-DMS8II003 | | | | | | | | | | | | | | | | OT | 0.0 | | | |
| wires down | | | | | | | | | | | | | | | | | | | | |

Fort Wayne Area                                     Field Revenue Operations

**Name: Linda Woods**  |  **PayPeriodEnds: 6/29/2008**  |  **MEALS:**  |  Absence Frequency:  |  Dept ID 10504

Remarks:

| CALENDAR DATES | Mon 16 | Tue 17 | Wed 18 | Thu 19 | Fri 20 | Sat 21 | Sun 22 | Mon 23 | Tue 24 | Wed 25 | Thu 26 | Fri 27 | Sat 28 | Sun 29 | ID Cd / ID | TOT HRS | STEP UP RATE | Account Code | ABM Activity | WO#/Other/Loc |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **OVERTIME PAY** | | | | | | | | | | | | | | | | | | | | |
| Read Billing Meters - OT | | | | | | | | | | | | | | | OT | 0.0 | | 9020002 | 251 | |
| Meter Reader StepUp Hours - FIELDNET - OT | | | | | | | | | | | | | | | OT | 0.0 | | 9020002 | 251 | |
| Meter Reader StepUp Hours - SPECIALIST - OT | | | | | | | | | | | | | | | OT | 0.0 | | 9020002 | 228 | |
| wires down | | | | | | | | | | | | | | | OT | 0.0 | | 5930000 | 228 | |
| DNP - Disconnect/Reconnect - OT | | | | | | | | | | | | | | | OT | 0.0 | | 9030000 | 252 | |
| DNP - Disconnect/Reconnect - Double Rate | | | | | | | | | | | | | | | OTD | 0.0 | | 9030006 | 252 | |
| **REGULAR PAY** | Mon | Tue | Wed | Thu | Fri | Sat | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Sun | Code | | | | | |
| Check Read - Respond to Customer Inquires | | | | | | | | | | | | | | | REG | 0.0 | | 9030001 | 239 | |
| Connect / Disconnect --Field Orders | | | | | | | | | | | | | | | REG | 0.0 | | 9020004 | 239 | |
| Disconnect / Reconnect --DNP | | | | | | | | | | | | | | | REG | 0.0 | | 9030006 | 252 | |
| Read Billing Meters | 8 | 8 | 8 | 8 | 8 | | | 8 | 8 | 8 | 8 | 8 | | | REG | 80.0 | | 9020002 | 251 | |
| Maintain Fleet | | | | | | | | | | | | | | | REG | 0.0 | | 9030000 | 432 | |
| Safety Programs | | | | | | | | | | | | | | | REG | 0.0 | | 9030000 | 322 | |
| Time Sheets | | | | | | | | | | | | | | | REG | 0.0 | | 9030000 | 341 | |
| Wires down | | | | | | | | | | | | | | | REG | 0.0 | | 593000 | 228 | |
| UUE - Excessive Use | | | | | | | | | | | | | | | REG | 0.0 | | 5870000 | 255 | |
| Change or Remove Meter | | | | | | | | | | | | | | | REG | 0.0 | | 5860000 | 248 | |
| Zero Use - Test Meters | | | | | | | | | | | | | | | REG | 0.0 | | 9020002 | 259 | |
| Vacation from 04-05-07 | | | | | | | | | | | | | | | RDY | 0.0 | | 9020002 | | |
| Meter Reader Step Up - FIELDNET | | | | | | | | | | | | | | | REG | 0.0 | | 9020002 | 251 | |
| Meter Reader Step Up - SPECIALIST | | | | | | | | | | | | | | | REG | 0.0 | | 9020002 | 251 | |
| VACATION | | | | | | | | | | | | | | | VAC | 0.0 | | | | |
| PERSONAL DAY OFF | | | | | | | | | | | | | | | PDO | 0.0 | | | | |
| SICK | | | | | | | | | | | | | | | SCK | 0.0 | | | | |
| HOLIDAY | | | | | | | | | | | | | | | HOL | 0.0 | | | | |
| Restricted duty | | | | | | | | | | | | | | | SUSP | 0.0 | | | | |
| **TOTAL REGULAR HOURS** | | | | | | | | | | | | | | | | 80.0 | | | | |
| **STORM HOURS** | Mon | Tue | Wed | Thu | Fri | Sat | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Sun | | | | | | |
| Storm Hours - OVERTIME-DMS8II002 | | | | | | | | | | | | | | | OT | 0.0 | | 5930000 | 228 | |
| Storm Hours - REGULAR-DMS8II002 | | | | | | | | | | | | | | | REG | 0.0 | | 5930000 | 228 | |
| Storm Hours - REGULAR-DMS8II003 | | | | | | | | | | | | | | | OT | 0.0 | | 5930000 | 228 | |
| wires down | | | | | | | | | | | | | | | OT | 0.0 | | 5930000 | 228 | |

USDC IN/ND case 1:11-cv-00097-JVB-RBC document 1 filed 03/22/11 page 33 of 60

# INTER-DEPARTMENTAL MAIL

*Cross out previous address. Use repeatedly until all spaces are utilized.*

Mrs. Phillips

[illegible]

He is on [illegible] leave at home

[illegible]

Conference. Both are my union stewards

Also, the [illegible] [illegible] [illegible] after [illegible] after a long [illegible] you have to put in a [illegible] So the last thing [illegible] [illegible]

~~Susa[n] Moo[re]~~

| | | |
|---|---|---|
| Name ~~Ft Wayne~~ | Name | Name |
| Bldg Name | Bldg Name | Bldg Name |
| Floor & Dept ~~1st Floor~~ | Floor & Dept | Floor & Dept |
| City & State ~~Ft Wayne IN~~ | City & State | City & State |
| Name ~~Chris Utterback~~ | Name | Name |
| Bldg Name ~~Spy Run Bldg 3~~ | Bldg Name | Bldg Name |
| Floor & Dept Metic | Floor & Dept | Floor & Dept |
| City & State | City & State | City & State |
| Name ~~Dental~~ | Name | Name |
| Bldg Name | Bldg Name | Bldg Name |
| Floor & Dept | Floor & Dept | Floor & Dept |
| City & State | City & State | City & State |
| Name [illegible] | Name | Name |
| Bldg Name | Bldg Name | |

RECEIVED
SEP 17 2008
FORT WAYNE, IN
M.H.R.C.

1. What is the medical condition that you believe was the basis of the employer's alleged discrimination?

diabetes and/or depression

2. How long have you had this condition?

1990 1989 gestation diabetes

3. If the condition has been diagnosed by a health care professional, when and what was the diagnosis?

diabetes type 2 1990

4. Do you know how long your condition is expected to last and how do you know?

lifetime - there is no cure

5. If the condition is of a short duration, (weeks or months), have there been or do you expect any permanent or long-term effect on your physical or mental well being or on your level of function?

Depression started in 2008 and again in 2009. This may also be an ongoing condition I've been off work both years for this s/o about 2 weeks

6. If your condition flares up or gets worse from time to time, how often does this happen, and. under what circumstance? It may happen every other month But it is a daily management situation. It can flare daily from good stress or illness.

7. If you have ever been hospitalized for your condition, when and for how long?

N/O

8. If you regularly see a doctor or other health care professional because of your condition, who do you see and how often?

Dr. A. Hanna every 3 months when I had insurance or Neighborhood Health Clinic without insurance every 3 months

9. Are you undergoing any treatment or do you take any medication, or use any non-obvious assistive devices to help with your condition? Please describe. *Yes I take insulin Shots and also 2 pills daily. I also Komplete a test Strip 2 or 3 times daily to see if diabetes is high or low also high Blood Pressure and anti depressent*

10. When and for how long have you undergone treatment, taken medication, or used assistive devices to help with your condition? *I had meds since 1990. I've taken Shots since 1991. I also test my Blood daily since 1990. Sometimes twice a day*

11. Are there times when the treatment, medication, or assistive devices you use are less effective (such as when you are stressed or ill, or in certain weather conditions)? *Yes. Being with out food if Stressed flares me up or Being over worked it is a daily monitoring situation*

12. Have you had to change your treatment, medication or assistive devices because they were no longer effective? *Yes after so long on one med it may need to be adjusted or if my readings are too high, I may need more insulin*

13. What are the side effects, or disadvantages, if any, of these treatment, medications, or assistive devices? *Side effects are tired, shakiness, frequent Rest Room, blurred vision, sense of confusion, headache*

14. With your use of medicines or assistive devices, and considering any side effects or disadvantages, how does your condition affect your functioning in daily life? *Good and Bad days. Sometimes exhausted, dizziness headaches*

15. With your use of medicines or assistive devices, and considering any side effects or disadvantages of their use, have you experienced any kind of limitations, problems, or restrictions in any activities? Include limitations in how long or how much you can do activities, and limitations in the circumstances or way in which you can do activities. Please mark all that apply: *If diabetes is out of control — even on meds*

Walking ✓ *2-3 hrs.*   Speaking ____   Learning ____

Standing ____   Breathing ____   Thinking ✓ *- not clear sometimes dizzy foggy*

Sitting ____   Lifting ____   Concentrating ____

Seeing ✓ *SOMETIMES BLURRY*   Reaching ____   Relating & getting along with others ✓ *Short on patience when sick*

Hearing ____        Sleeping ✓ *exhausted*        Reproduction/sexual
                                                  activities ✓ *no*
Eating ____        Controlling bodily *frequent*            *energy*
                   waste ✓ *restrooms*

Brushing your teeth, bathing, shaving, dressing, hair styling, household chores,
grocery shopping, preparing meals, handling personal finances, using the computer
[relevant to caring for self and/or performing manual tasks]
other (e.g., bending, stooping, twisting, squatting, pushing, pulling, climbing, etc...)
[combined limitation in these activities may amount to substantial limitation of a major
life activity] *feeling of Being tired - no confident of handling personal*
*finances when headaches or dizziness. Too tired for house cleaning*

16. In more detail, please list and describe each of the limitations you just identified. *when*
*diabetes is out of control it can effect Both ways. High rdje*
*is a sense of tired, to lots of restrooms, head racey sense*
*of confusion. Low sugar effects - dizzy, sweating, very*
*weak will shakiness - close to a seizure affect.*

17. How severe are each of the limitations? And, if you experience limitation only under
certain circumstances, what are those circumstances and how often do they occur? *Each limit.*
*is severe on the high or low side. when my diabetes is*
*under control, there's no problems. The effects can happen*
*anytime But I usually get it once or twice a month.*

18. Do you believe it is harder or requires more effort for you to do any activities than it is
for the average person? *Yes. it takes so much energy when*
*diabetes is out of control. when it's not, I don't*
*have a problem But I don't know when it's going to flare up.*

19. From the time of the alleged discrimination, and working back in time to when you
first got this condition, tell me exactly when and for how long you've experienced the
limitations. *I've had the same problems since 1990. But*
*didn't know I had diabetes. The longer I've had it,*
*it advanced to insulin, different side effects.*
*All of the problems started in 1989 when I was*
*pregnant. for 2 years I managed without meds But*
*the restrooms and exhaustion, I've experienced since 1990.*
*It's an everychanging disease*

20. Are there other people - such as family, friends, coworkers, supervisors, or health care professionals --- who could tell us how your condition causes problems with certain activities? yes, my family and friends have seen it and watch for it. My doctors know excatly my situation why co-workers noticed in the am I'm not quite "THERE"

21. If other people help you with activities you have problems with, how often do they help and in what ways? I try to be w/ people who I can trust. They make sure I eat or stop for a snack and make sure I don't forget things (leaving my purse) when shopping or traveling. My daughter helps with cleaning

22. What condition did the employer know or believe you to have, and what do you think the employer believed you could not do because of this condition? Why do you think this? They knew I have diabetes. They think I can't do my Job Because I'm a meter Reader. Everyone in my dept works thru lunch and don't take a "legal" restroom break to get off 1/2 hr early. My time stamp looks slower then the whole dept.

23. Do you have any records you can provide that identify or describe your condition (for example, medical records, doctor's notes, workers' compensation records, rehabilitation records, Dept. of Veterans Affairs documents, etc.)? yes, I have med records, dr notes, Company doctor notes are in my HR file at my job I also have a letter from my counselor to AEP letting them about the stress-n-counseling I was attending

24. Do you have any records you can provide that indicates that your condition now limits you in any activities, or limited you in the past? Yes they were included in my Metro file and and in my file at AEP I was on sick leave when I was fired from my Job

25. Has your employer been given any records or documents, including doctor's notes that discuss your condition or any restrictions or limitations resulting from your condition? Yes starting in 1994, doctors letters saying I need :45 to 1hour lunch (unpaid)

If yes,
   a) What records were given to your employer? Dr Notes, disability forms completed by my doctor. Letters from dr and counselor

   b) What did those records say and who were they from? Most said I was stressed out and couldn't work and my meds were not working to control my depression or diabetes a outside NURSE for AEP also told them I was depressed

c) When did your employer receive these records? *They received the info in May, 2 months before I was fired in July*

26. If you have ever been unable to work at all due to your condition or treatment for you condition, when, for how long and why were you unable to work? *I've Been off Before due to diabetes sometimes a week or 2 if sugar was high Because of dizziness or exhaustion. This happened at least 2 a year since 1990.*

27. Have there been any jobs or job duties that you believe you couldn't do because of your condition or treatment for your condition. Please describe. *I feel I can do any job with the right training. But once again, if my sick, I'm sick. This includes driving to work*

If yes,

    a) How does or did your condition interfere with doing these jobs or job duties?

    b) When and for how long have you been unable to do these jobs or job duties?

    c) To what extent are these jobs available in the area where you live?

    d) Do you have the training, knowledge, skills, abilities, and education needed to do these types of jobs? Please describe.

    e) Have you ever done these types of jobs?

28. Do you have any medical records you can provide that bear on your ability to work or that show that there are any jobs or job duties that you can't do or are limited in doing because of your condition? *Yes, I was released to full duty in Sept '09 By neighborhood Health Clinic. I returned Dec 09. I asked for Resonable Accomdations - change of start time and it was granted in FEB 10*

29. Did the employer say or do anything to indicate that it believed you could not do a job because of your condition? *Yes, my supervisor Kevin Jenkins, meeting Before I went on sick leave said may need to Be taken to a company doctor "We not getting younger" "Taking too many RestRoom BREAK"*

30. Did the employer offer or refuse you a different job and, if so, what job? *No, they fired ME instead on a false charge of falsification. The union, true arbitation, got my job back*

31. Please give me your work history, including the types of jobs you've held in the past. *I've held Cashier, data entry, customer service jobs. I worked in the office "cust service" at AEP before Meter Reading*

32. Please tell me about your education, including any degrees, certificates, licenses, or vocational training you may have. *High School Educated 3 years of college - IVy Tech*

# CITY OF FORT WAYNE

THOMAS C. HENRY, MAYOR

**Metropolitan Human Relations Commission**

March 15, 2010

Amanda Brownlee
3203 Hoagland Avenue
Fort Wayne, IN 46807

**RE:** *Brownlee vs. Indiana Michigan Power*
*EO-0270-A8/24D-2008-00479*

Dear Ms. Brownlee:

This letter is in regards to the above referenced charge of alleged discrimination. In order to continue with the investigation of this matter, you will need to complete the enclosed disability questionnaire and return it to the agency by March 24, 2010. Your response is needed to determine how we should proceed with the investigation.

Respectfully,

Metropolitan Human Relations Commission
By: Delinda Wyatt, Investigator

SAFE CITY • QUALITY JOBS • B.E.S.T.

One Main St. • Room 680 • Fort Wayne, Indiana • 46802-1804
phone: 260-427-1146 • fax: 260-427-1126 • TDD: 260-427-1342
An Equal Opportunity Employer

1. What is the medical condition that you believe was the basis of the employer's alleged discrimination?

2. How long have you had this condition?

3. If the condition has been diagnosed by a health care professional, when and what was the diagnosis?

4. Do you know how long your condition is expected to last and how do you know?

5. If the condition is of a short duration, (weeks or months), have there been or do you expect any permanent or long-term effect on your physical or mental well being or on your level of function?

6. If your condition flares up or gets worse from time to time, how often does this happen, and. under what circumstance?

7. If you have ever been hospitalized for your condition, when and for how long?

8. If you regularly see a doctor or other health care professional because of your condition, who do you see and how often?

9.  Are you undergoing any treatment or do you take any medication, or use any non-obvious assistive devices to help with your condition? Please describe.

10.  When and for how long have you undergone treatment, taken medication, or used assistive devices to help with your condition?

11.  Are there times when the treatment, medication, or assistive devices you use are less effective (such as when you are stressed or ill, or in certain weather conditions)?

12.  Have you had to change your treatment, medication or assistive devices because they were no longer effective?

13.  What are the side effects, or disadvantages, if any, of these treatment, medications, or assistive devices?

14.  With your use of medicines or assistive devices, and considering any side effects or disadvantages, how does your condition affect your functioning in daily life?

15.  With your use of medicines or assistive devices, and considering any side effects or disadvantages of their use, have you experienced any kind of limitations, problems, or restrictions in any activities? Include limitations in how long or how much you can do activities, and limitations in the circumstances or way in which you can do activities. Please mark all that apply:

Walking _____          Speaking _____          Learning _____

Standing _____         Breathing _____         Thinking _____

Sitting _____          Lifting _____           Concentrating _____

Seeing _____           Reaching _____          Relating & getting along
                                               with others _____

| Hearing ____ | Sleeping ____ | Reproduction/sexual activities ____ |
|---|---|---|
| Eating ____ | Controlling bodily waste ____ | |

Brushing your teeth, bathing, shaving, dressing, hair styling, household chores, grocery shopping, preparing meals, handling personal finances, using the computer [relevant to caring for self and/or performing manual tasks]

other (e.g., bending, stooping, twisting, squatting, pushing, pulling, climbing, etc...) [combined limitation in these activities may amount to substantial limitation of a major life activity]

16. In more detail, please list and describe each of the limitations you just identified.

17. How severe are each of the limitations? And, if you experience limitation only under certain circumstances, what are those circumstances and how often do they occur?

18. Do you believe it is harder or requires more effort for you to do any activities than it is for the average person?

19. From the time of the alleged discrimination, and working back in time to when you first got this condition, tell me exactly when and for how long you've experienced the limitations.

20. Are there other people - such as family, friends, coworkers, supervisors, or health care professionals --- who could tell us how your condition causes problems with certain activities?

21. If other people help you with activities you have problems with, how often do they help and in what ways?

22. What condition did the employer know or believe you to have, and what do you think the employer believed you could not do because of this condition? Why do you think this?

23. Do you have any records you can provide that identify or describe your condition (for example, medical records, doctor's notes, workers' compensation records, rehabilitation records, Dept. of Veterans Affairs documents, etc.)?

24. Do you have any records you can provide that indicates that your condition now limits you in any activities, or limited you in the past?

25. Has your employer been given any records or documents, including doctor's notes that discuss your condition or any restrictions or limitations resulting from your condition?

If yes,
    a) What records were given to your employer?

    b) What did those records say and who were they from?

c) When did your employer receive these records?

26. If you have ever been unable to work at all due to your condition or treatment for you condition, when, for how long and why were you unable to work?

27. Have there been any jobs or job duties that you believe you couldn't do because of your condition or treatment for your condition. Please describe.

If yes,

      a) How does or did your condition interfere with doing these jobs or job duties?

      b) When and for how long have you been unable to do these jobs or job duties?

      c) To what extent are these jobs available in the area where you live?

      d) Do you have the training, knowledge, skills, abilities, and education needed to do these types of jobs? Please describe.

      e) Have you ever done these types of jobs?

28. Do you have any medical records you can provide that bear on your ability to work or that show that there are any jobs or job duties that you can't do or are limited in doing because of your condition?

29. Did the employer say or do anything to indicate that it believed you could not do a job because of your condition?

30. Did the employer offer or refuse you a different job and, if so, what job?

31. Please give me your work history, including the types of jobs you've held in the past.

32. Please tell me about your education, including any degrees, certificates, licenses, or vocational training you may have.

# CITY OF FORT WAYNE

**THOMAS C. HENRY, MAYOR**

## Metropolitan Human Relations Commission

November 5, 2009

Amanda Brownlee
3203 Hoagland Avenue
Ft. Wayne, IN 46807

**RE:**   *Amanda Brownlee vs. Indiana Michigan Power*
*EO-0270-A8/24DA-2008-00479*

Dear Ms. Brownlee:

This letter is in regards to the above referenced charge of alleged discrimination. Be advised that the Commission requested and has received a position statement from the above named Respondent. You also provided a rebuttal on September 17, 2008. You recently contacted the Agency and stated that you went through arbitration. Please advise this Agency if you entered into an Agreement with Indiana Michigan Power. If so, is there any mention of above complaint incorporated in the Agreement?

Please provide an answer in writing by November 12, 2009. This will determine what avenue should be taken towards investigation.

Respectfully,

Metropolitan Human Relations Commission
By: Delinda Wyatt, Investigator

SAFE CITY • QUALITY JOBS • B.E.S.T.

One Main St. • Room 680 • Fort Wayne, Indiana • 46802-1804
phone: 260-427-1146 • fax: 260-427-1126 • TDD: 260-427-1342
An Equal Opportunity Employer

Dear Mrs Phillips                    Sept 08

Falsification: 1. To make false by giving an untrue idea or by changing 2. To tell lies

I have Been a diaBetic since 1993 and also suffer from depression. I've worked as a meter reader since 1990 and always enjoyed my job Because of the independence and flexiBility. 4My department's "unwritten" policy allowed flex time to work around appts, children's activities, co-workers' funerals, etc. as long as we make the 8 hrs. day. The Company's main mission is "Safety Comes First" Never endanger the lives of others or yourself.

Working in my department, I've had several supervisors. Each had their own way of running that department. Kerry, my past supervisor, was always flexiBle and understanding of my medical proBlems. I Explained to him on several occasions that mornings are hard for me Because of the meds,

I'm dizzy, forgetful and suffer from stomach cramps. He understood that if I come in late, I was committed to working over to finish or record my time as vacation or sick. We record our time thru a computer Bi weekly. We post time in the am Thursdays, posting the next day fridays time B4 friday and get paid the following friday. Our Sup. would always correct fridays and he corrects any mistakes as needed. I enclosed L. Woods timesheet. She is a witness that Kerry "practices" this policy. She said she posted her time as work. 8 hrs when she was actually on vac. She came back a week later. During next payroll, realized the mistake, told Kerry and he corrected it for her. No written warning, termination, was given. Her cell# 515-2010 The Co. didn't go to her. She went to them. Written warnings stays in our files 1 year. They are suppose to Be removed if no other offense happens in that year. Four years ago I made a mistake on payroll. And all my warnings are still on file. Usually the step3 of progression are 1st offense — oral/or written 2nd — 3 days off without pay

3rd - 5days, 4th - termination.
Falsiciation offense is about the only
one that is an automatic firing.

March Kevin Jinkins our head super., noticed my
08 tardiness. In March, he and kerry, with
my union steward Jerry Geise, had a
meeting concerning it. Kevin was not aware
of all my personal and medical problems.
~~that~~ it was revealed to him to him that day.
He said I was a valuable employee-n-help
from the company was for me. I told them
details of my depression, stress, and high
sugar, + made me forgetful and I was starting
new meds to get a handle on it. There was
no warning of termination. No doctor slip
was requested and he didn't suggest
that I need to see the company doctor.
Jerry is a witness to this call # 241-8905.
If I knew my job was on the line, I
would have taken a sick leave in March.
I had 20 years of service with a sick
bank of 2 years of paid time off.
I started faithfully on my anti-depressions
trying to deal with the side effects
it gave me. Car accident 4/08 no threat of
losing job. Last Safety issue 1993. "Be Careful" they said

My head continued to spin in the am
stomach cramps, etc. Several times I
had to go home, for restroom, shower, and
go back on my route. Kerry knew this.
This 1st time I remember telling him, he
laughed it off and informed me "that was
too much information" I always noted
it down on my "route break" info free-
form text. and I post it on our daily
sign in + sign out log. 3 different times
I remember Kerry knowing. Once
our safety admins. Kim Curry, wanted
to walk the route with me and Kerry.
When Kerry called my cell I was at
home in the shower. He asked me what
time I'll be back on the route and
I met them there. No reprimand or
punishment was given. Kim Curry is
a witness to this. We have never
had to ask for permission to go off route
Especially for restroom breaks. One
time when Kevin and others found out
its now a charge of policies 1, 22, and 23.
Readers spend time w/ customers talking etc.
We view this as Customer Service.
Some customers give veggies, flowers, etc.
from their garden and we bring them in

for everyone to share. With our cust.,
we've watched newBorns grow and
old men die. WE share their experinces.
We're at their house every month.
No approval or permission to stop
was needed. It was an "un written"
policy. Ask DEB Brannon cell# 705-5967
She's Been a reader over 20 years. She
also can witness I made up my time
as need. She also Spends time with
Customers and she works as a step-up
Supervisor for the company as needed
when Kerry is off.

May   DEB Brannon, Linda Woods, Penny Wallace cell# 403-8539
08    can witness my lunch time. I have al-
ways taken 1hour lunch. I don't drive
a truck and it sometimes take 30 minuets
or more for a restroom Break. GEt TO THE
CAR, DRIVE TO RESTROOM, DRIVE BACK TO RTE.
Again, flexibil. → Some readers start 6:30
some 7am. I like starting later. for Jan.
Kerry let me start at 8am. In winter
months everyone starts at 7:30am. Some
Readers take :30 min lunch Some work
true lunch and leave :30 early. I can't
work like that. In March, Kevin changed
⤺FEB, on↝

my starting time to 7:30 with everyone else.
I still had my hour lunch option
But if I could, I would take :30 to
get off early too. Linda, DEB n Penny
isin witness the flex time for me.

May 20, called Back in with Kevin n Kerry.
no union steward. They questioned me
again about the charge "time off Route"
I stated I couldn't remember. They meds,
not working unaware of to not making
time up. I told them I always
give myself :30 travel time to and from
route. We also do other things Besides
reading thats not in computre time Stamp.
We have to have safely meetings, fill up on gas,
have truck inspections, etc. I also
would fill up freezer in our dept with
Bottled water, clean out trucck etc.
This is Company-time and not my own time.
On the sign in/sign out sheet should
Show I came in sick and worked sick
Because our depart. was short on readers
and they wanted me to train a reader.
I didn't try to lie or hide any "lost time"
I told them I was still sick and it
would Be Better for me to take a sick leave.

~~the~~ months were a fog to me. I always tried to put in free-form text what was going on so if I was questioned or if Kerry needed to correct my time the answers would be there. On my present job I would pick up remote reading accts. that were did not get a reading and also Business accounts that the meter had to be physically reset to register for next month. This would take to me to streets and mtrs. that I ~~did~~ sometimes did not Know. This takes extra time to find, get customers to open gates etc. This explains what "move reader" means. This is diffrent than walking house to house. I always put safety first and Kerry did not have a problem about me stopping to read mapp, ask directions, etc. "regroup." As attach #2 goes, I tried to tell them what was going on. I do remember 5/8 I told DEB I forgot my cell phone - SAFETY ISSUE "fore me. I do remember 5/14/08 Calling to tell them I was sick But they wanted me to train Jason ("for my Job?")

JUNE  enclosed - note to HR   cc: Kevin Jenkins
08                    HUMAN RESOURCES

# SICK LEAVE

Recovery Center 1-888-237-2363 option #3
Started sick leave May 21, 2008. My
doctor gave them 3 different statements.
"attached". Each statement was not enough
for them. Because from ABBY in our
Recovery Center, my doctor did not
fill out #3 on this COD which asks
for pych. tests. My doctor is a MD.
no pych tests were given or taken.
They assigned an outside nurse
Kate # 952-927-0184. She talked with
me and Dr Hanna # 422 1906 and said
the eff. meds I was on was not strong
enough and I was under a chemical
imbalance. She admitted after a 10 min.
talk w/ me that I was under alot of
stress. But it would be better for me to try
to go back to work within 3 months. She
said she would give a final report. I asked
that she change ABBY for me because she
was very rude and demanding to me
and my doctor. She could not. ABBY
put me on leave of absence, took me
my pay - I had 80 hours of vaca vacation
took my insurance Because she felt
I was not sick enough to be off sick
I started mental counseling in June.

Kate from BMI was the one who restored my sick Benefits. Not the Company.

July 08 She called July 1st after my last doctor's statements in June was not good enough. She told them to restore.

July 16, 08 (still sick) due to return 7/28 Kevin calls me at home. Questions me again about incidents in May. I told him so again I was very sick during that time couldn't remember exact times But never tried to lie or not work my 8 hours. Also told him I messed up on the payroll that I put in that Thurs am Because of the dizziness, forgetfulness I have Been going tru. Being on the anti-depression takes at least a month to take effect. My doctor was trying to adjust and even change to get it right. I never tried to falsify and if Kerry found mistakes he still would have/could have adjusted times. Fired 7/17/08 for mistakes on Payroll that happened in May 08? The Charge was "poor Job" now its falsification

Again, I've never lied about any of medical meds or problems. The Co know everything/every second of my work. I've always Been committed to getting the job done safely but in sickness and health. The whole depart knew about my am sleepiness, dizziness. Our dept has coffee pots tea sometimes doughnuts. Its never a rush to run off and start reading at 7:31 am. So many other factors are involved - pumping gas, time, getting water and sys even restrooms.

I Know I'm Being used as an example Upper found out how Lax that department is. Kerry's main concern was that you finished work assigned - the rest she was understanding of. The Company and upper mangement sees that I have a medical problem and didn't want to deal with it or either scared of it. According to Jan (enclosed) I had rights of accomodation that were never offered or allowed to me. The Company wants me to read meters like the rest of readers who sometimes

don't take a Break or lunch to get
off early. I physically can't work
that way. Kerry always let me
have flex-time to do my job
But when his Bosses found it out,
I was fired. That department has
never gone By the Book concerning
Employee hand books, tardiness etc or
sick leave policies. No one gets fired
Because their dr state wasn't received
in 3 days, Doctors take time off too.

Hopefully you can see this for
the truth that it is.

Respectfully

Amanda
Brownlee

PS. My mental counselor is not a M.D.
She referred me Back to my doctor
to filled out their letter from June 13,08.
Back n forth they wrote I had or
not had seek Benefits. 1 dr's Noted
dated 6/30/08 I don't have But can get.

Tara Cooper, HR

Paperwork was mailed from my doctor's office to me. I don't know if Recovery Center received them. Last year. Maybe they were lost in my medical file. Hopefully you have received my ESB for my leave of absence and will continue my Sick Benefits. Trust me, I am not trying to fake sick. Listening to mental counselors including the nurse the Recovery Center assigned, I have been depressed a long time. In spite of my mental and physical conditions, I've always tried to be committed to my job, rain or shine, sick or well. Lots of days I dragged myself in late making sure I worked out to finish my route. Kerry has known a long time the personal, physical, and stressful problems I've gone through. He has understood and tried to work with me. I don't think Kevin knew my circumstances. The Blue slip I got in April, I admitted to them I was off anti depression meds and my depression was worse.

I thought I was in control of things without meds. I got back on them. Several weeks later, I have another Blue slip. Kerrey was upset I had an incident where I went home to shower because of bodily waste and I was too ashamed to tell him so I just wrote it down on route break I know he can no longer carry me. I have admitted to myself that I am sick and it's affecting my job. I've tried to hide it (for too long) from myself and I'm Depression, Diabetes, High Blood pressure. The nurse the Recovery Ctr. referred mentioned my meds might not be strong enough and I may have a chemical imbalance. I'm asking I&M to please believe I have some medical issues and to give ~~the~~ ME time and my sick benefits to get it all back together. My doctor and new counselor, I'm NURSE are helping me. Trust me, I want to be well ~~again~~ again.

Sincerely,

Amanda Brownlee

CC: Kevin Jenkins